THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIFFANY TOTH-GRAY and EMILY SCOTT, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 19 C 1327 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| LAMP LITER, INC. d/b/a LAMP LITER CLUB, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs Tiffany Toth-Gray and Emily Scott are models. They bring this action against Defendant Lamp Liter, a strip club in Ottawa, Illinois, alleging that Lamp Liter used their images without permission to promote the club. Plaintiffs bring claims under the Lanham Act and the Illinois Right of Publicity Act, and for negligence. Defendant moves to dismiss the Lanham Act claims under Rule 12(b)(6), arguing that Plaintiffs are not famous enough for their images to be protectable marks under the Act. Defendant also moves to dismiss the IRPA and negligence claims as time-barred. For the reasons stated here, Defendant's motion [Dkt. 18] is granted in part and denied in part.

**BACKGROUND**

Plaintiffs Tiffany Toth-Gray and Emily Scott are professional models. (Dkt. 1 ¶¶ 22-23.) They earn a living by modeling and selling their images to various commercial entities, which use the images to advertise, endorse, and promote products and services. (*Id.* ¶ 28.) Gray holds the title of *Playboy* Playmate and was named the *Playboy* "Cyber Girl of the Month" for May 2006. (*Id.* ¶ 50.) Gray has been featured in various catalogs and magazines, including *Super Street Bike*, *Import Tuner*, *Sport Truck*, *Iron Man*, *Seventeen*, and *Maxim*. (*Id.*) She has over 3.8 million Facebook followers, over 1.2 million Instagram followers, and over 223,000 Twitter followers.

1

(*Id.*)  In the modeling industry, the number of social media "likes" or "followers" is a strong factor in determining a model's earning capacity.  (*Id.*)

Scott is a model and DJ based in Sydney, Australia and London, England.  (*Id.* ¶ 61.)  She has been voted "one of the world's sexiest women" by multiple magazines in the United States, United Kingdom, and Australia, has been featured on over 30 magazine covers, including *Maxim* and *FHM*, and has appeared in ten features for European editions of *Playboy*.  (*Id.*)  Scott appeared in advertising campaigns for Wonderbra and Lipton Iced Tea.  (*Id.*)  She appeared in an episode of the hit television show *Entourage*, was chosen to be a contestant on Dancing with the Stars Australia, and has appeared on other reality television shows.  (*Id.*)  Scott is also a touring DJ.  (*Id.*)  She has headlined tours and festivals across the world and appeared alongside well-known DJs and musical artists, and has mixed high-profile compilations for major record labels including EMI.  (*Id.*)  After completing a 10-city DJ tour in Southeast Asia, Scott was chosen for the cover of *FHM* Malaysia's March 2015 edition as "Australia's hottest export."  (*Id.*)  Scott has over 1.3 Facebook followers.  (*Id.*)

Plaintiffs' careers depend on their goodwill and reputations, which are critical to establishing an individual brand, being selected for modeling contracts, and maximizing earnings.  (*Id.* ¶¶ 29-33.)  To that end, Plaintiffs try to control the use and dissemination of their images and are selective about which companies and brands they model for.  (*Id.* ¶¶ 34-37.)

Defendant Lamp Liter operates a strip club in Ottawa, Illinois, where it engages in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain customers.  (*Id.* ¶¶ 24, 39.)  Lamp Liter promotes its business, events, and parties using Facebook and other social media.  (*Id.* ¶ 26.)  On February 24, 2016, Lamp Liter posted an image of Gray on its Facebook page with the caption "WET YOUR WHISTLE WEDNESDAY: $8 Pitchers."  (*Id.*

2

¶ 52; *see also* Dkt. 1-1.) On May 3, 2016, Lamp Liter posted an image of Scott on its Facebook page with the caption "THIRSTY THURSDAY: $2 drafts." (*Id.* ¶ 63; *see also* Dkt. 1-2.) Both images remain publicly posted on Lamp Liter's Facebook page. (*Id.* ¶¶ 52, 63.) Plaintiffs did not give Lamp Liter permission to use their images. (*Id.* ¶¶ 57, 68.)

## DISCUSSION

To overcome a Rule 12(b)(6) motion, "a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court accepts the complaint's factual allegations as true and draw all permissible inferences in Plaintiffs' favor. *Id.* However, "[w]hile a plaintiff need not plead 'detailed factual allegations' to survive a motion to dismiss, she still must provide more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action' for her complaint to be considered adequate under [Rule] 8." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

### I.  Lanham Act Claims

Plaintiffs bring false advertising and false endorsement claims under the Lanham Act, 15 U.S.C. § 1125(a). Lamp Liter moves to dismiss the Lanham Act claims under Rule 12(b)(6), arguing that Plaintiffs are not famous enough to render their images and likenesses as protectable marks under the Act.

To bring a false-endorsement claim under the Act, Plaintiffs must show that Lamp Liter's Facebook posts likely caused consumers to believe that Plaintiffs endorsed Lamp Liter. *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 522 (7th Cir. 2014); *see also Woodard v. Victory Records,*

*Inc.*, No. 11 C 7594, 2016 WL 1270423, at *9 (N.D. Ill. March 31, 2016.) Similarly, to bring a false-advertising claim under the Act, Plaintiffs must show that Lamp Liter "made a material false statement of fact in a commercial advertisement and that the false statement deceived or had the tendency to deceive a substantial segment of its audience." *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 889, 907 (7th Cir. 2007); *see also, e.g.*, *Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 933 (N.D. Ill. 2016).

In both cases, the inquiry focuses on confusion by the consumer. *See Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 455 (7th Cir. 2011); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819-20 (7th Cir. 1999). In trademark infringement cases, courts consider the following factors to determine the likelihood of confusion: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to "palm off" his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). In false endorsement cases like this one, "[c]ourts analyze a variety of factors to determine whether the use of a mark creates the likelihood of confusion, including the level of plaintiff's recognition among the segment of the society for whom defendant's product is intended, the relatedness of plaintiff's fame or success to defendant's product, and defendant's intent in selecting the plaintiff." *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 883 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010) (citations omitted).

Lamp Liter's argument focuses entirely on the strength of Plaintiffs' marks. Lamp Liter argues that Plaintiffs' claims fail because they are not famous enough to have a protectable interest in their image and likeness. According to Lamp Liter, the posts did not use Plaintiffs' names and

4

their claims are thus "based solely [on] a face and body." (Dkt. 19 at 3-4.) And because "[n]either Plaintiff is Michael Jordan," images of their faces and bodies "do[] not function as a source identifier," and so there is no way a consumer could be confused if they do not view the images as identifiers in the first place. *Id.* (citing *Jordan*, 743 F.3d at 522.) Lamp Liter argues, in other words, that consumers would not be confused by its use of Plaintiffs' images because consumers do not know who Plaintiffs are.

Lamp Liter's argument fails for two reasons. First, Lamp Liter asks the Court to make factual determinations at the motion to dismiss stage (*i.e.*, whether or not Plaintiffs are famous), which is inappropriate, and those determinations fly directly in the face of the Complaint's well-pleaded allegations. Second, Lamp Liter misconstrues the law applicable to false endorsement and false advertising claims under the Lanham Act.

Plaintiffs are not required to allege that they are famous in order to state Lanham Act claims based on misuse of their images. They only need to plead facts showing that Lamp Liter's use of their images deceived consumers and likely caused them to believe that Plaintiffs endorsed Lamp Liter. *See, e.g.*, *Bondar v. LASplash Cosmetics*, No. 12 C 1417, 2012 WL 6150859, at *7 (S.D.N.Y. Dec. 11, 2012) (Section 43(a) of the Lanham Act "does not require celebrity, only a likelihood of confusion . . . there is a level of consumer recognition short of celebrity—as the term is usually understood—capable of causing consumer confusion"); *see also, e.g.*, *Arnold v. Treadwell*, 642 F. Supp. 2d 723, 735 (E.D. Mich. 2009) ("The Lanham Act itself does not have a requirement that a plaintiff is a celebrity.").

To be sure, the strength of Plaintiffs' marks and "the level of [Plaintiffs'] recognition among the segment of the society for whom defendant's product is intended" are certainly relevant factors the Court considers when determining whether Plaintiffs have shown that Lamp Liter's use

5

of their images likely caused consumers to be confused. *See Stayart*, 651 F. Supp. 2d at 883. Even though Plaintiffs do not allege that they are famous celebrities, they pleaded enough facts to establish a likelihood of consumer confusion. Both Plaintiffs allege that they are well-known professional models who have appeared in dozens of magazines and catalogs and who have millions of followers on social media. (Dkt. 1 ¶¶ 28, 50, 61.) Plaintiff Scott also alleges that she has appeared in commercial advertising campaigns and on television shows and that she is a well-known touring DJ. (*Id.* ¶ 61.) The Court accepts those well-pleaded allegations as true for purposes of this motion. Based on Plaintiffs' allegations, it is entirely plausible that a consumer might see Lamp Liter's Facebook posts, recognize Plaintiffs from their modeling, television, or DJing work, and incorrectly conclude that Plaintiffs endorse Lamp Liter, that they work there, or that they are otherwise affiliated with the club. The Complaint is more than sufficient, at this stage, to show that Plaintiffs are recognizable enough (and thus that their marks are strong enough) for consumers to be confused by Lamp Liter's use of their images. *See Bondar*, 2012 WL 6150859, at *7 (allegations that plaintiff was a "'well-known' fashion model, who has appeared on catwalks for prestigious designers and been featured in a number of popular fashion magazines" established that plaintiff's mark was sufficiently strong to cause a likelihood of consumer confusion.)

Lamp Liter relies on a case from this District in which another court held that a false endorsement claim requires the plaintiff to demonstrate "that he was a 'celebrity' when the defendants used his persona, name, and likeness; otherwise, his identity does not constitute an economic interest protectable under the Lanham Act." *See* Dkt. 24 at 2 (citing *Pesina v. Midway Mfg. Co.*, 948 F. Supp. 40, 43 (N.D. Ill. 1996)). That holding relies on a since-abrogated case from the Ninth Circuit, and, unlike here, the plaintiff "offer[ed] nothing" to show that his likeness was recognizable at all, let alone that he was a "celebrity." *Id.* at 42. And whether or not Plaintiffs have an

economic or commercial interest in their likenesses is an issue of standing, which Lamp Liter did not raise in this motion. *See Stayart*, 623 F.3d at 438 (affirming dismissal of Section 43(a) claims for lack of standing where plaintiff failed to show a commercial interest in the use of her name.)

Lamp Liter also relies heavily on a similar lawsuit brought by Toth and other plaintiffs against gentleman's clubs in the Southern District of New York. *See Toth v. 59 Murray Enters., Inc.*, No. 15 C 8028, 2019 WL 95564, at *5-6 (Jan. 3, 2019). In that case, the court granted summary judgment in defendants' favor on Toth and other plaintiffs' false endorsement Lanham Act claims because Toth and the other plaintiffs failed to present evidence that their marks were strong enough to cause consumer confusion. Another district court's factual findings on a different summary judgment record are not relevant to the sufficiency of Plaintiffs' complaint here. Lamp Literalso urges the Court to adopt the Southern District's holding that the strength of Plaintiffs' marks are an important factor in the consumer-confusion analysis. As discussed earlier, the strength of Plaintiffs' marks is indeed important, but Plaintiffs have pleaded facts demonstrating that their marks are strong enough that consumers could be confused by Lamp Liter's use of their images. Lamp Liter's motion to dismiss Plaintiffs' Lanham Act claims under Rule 12(b)(6) is denied.

## II. IRPA and Negligence Claims

Plaintiffs also bring negligence claims and claims under the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.* Lamp Liter moves to dismiss these claims as time-barred. "Because complaints need not anticipate and attempt to plead around defenses, a motion to dismiss based on failure to comply with the statute of limitations should be granted only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense. In other words, the plaintiff must affirmatively plead himself out of court; the complaint must plainly reveal that the action is untimely under the governing statute of limitations." *Chi. Bldg. Design, P.C. v.*

*Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014) (internal quotations and citations omitted). The parties do not dispute that the negligence claims are subject to a two-year statute of limitations. *See* 735 ILCS 5/13-202.

The IRPA does not specify a statute of limitations and the Supreme Court of Illinois has not provided any guidance on the question. *Martin v. Living Essentials, LLC*, 653 F. App'x 482, 485-86 (7th Cir. 2016). Lamp Liter argues that a one-year statute of limitations applies, citing *Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006). *Blair* "does conclude that a one-year statute of limitations applies to claims under the IRPA" and appears to be "the only Illinois decision on point." *Martin*, 653 F. App'x at 485. The Seventh Circuit has repeatedly "decline[d] to predict if the [Illinois] supreme court would endorse *Blair*." *Id.* at 486. Without guidance from the Illinois Supreme Court, the Court "looks to decisions of intermediate appellate courts in the state for persuasive guidance." *Abstract & Title Guar. Co., Inc. v. Chi. Ins. Co.*, 486 F.3d 808, 811 (7th Cir. 2007). Because *Blair* remains the only on-point decision, and because the weight of authority by other courts in the District holds that *Blair's* one-year statute of limitations applies, the Court will follow suit. *See Wendy's*, 183 F. Supp. 3d at 929-30; *see also Martin v. Wendy's Int'l, Inc.*, No. 15 C 6998, 2017 WL 1545684, at *3-4 (N.D. Ill. April 28, 2017) (declining to disturb its earlier holding that *Blair*'s one-year limitations period applies to IRPA claims despite the Seventh Circuit "tak[ing] pains to point out . . . that it considers it an open question" whether IRPA claims are subject to a one-year or five-year statute of limitations) (citing *Martin*, 653 F. App'x at 485-86); *see also, e.g.*, *Yeager v. Innovus Pharms., Inc.*, No. 18 C 397, 2019 WL 447743, at *4-5 (N.D. Ill. Feb. 9, 2019); *Troya Int'l, Ltd. v. Bird-X, Inc.*, No. 15 C 9785, 2017 WL 6059804, at *13-14 (N.D. Ill. Dec. 7, 2017). A one-year statute of limitations period applies to Plaintiffs' IRPA claims.

A cause of action under IRPA typically accrues on the date when the allegedly infringing publication was first published. *Troya*, 2017 WL 6059804, at *13 (citing *Blair*, 859 N.E.2d at 1192). Negligence claims generally accrue at the time of injury. *State Farm Fire & Cas. Co. v. John J. Rickhoff Sheet Metal Co.*, 914 N.E.2d 577, 565 (Ill. App. Ct. 2009). Here, Plaintiffs allege that the offending Facebook posts were published on February 24, 2016 and March 3, 2016. They filed their complaint on February 22, 2019. Under a straightforward application of the applicable one- and two-year statutes of limitations, and assuming their claims accrued on those publication dates, Plaintiffs' negligence and IRPA claims are time-barred.

Plaintiffs argue, however, that they have pleaded a pattern of intentional conduct, continuing through the present, and that their claims thus survive under the continuing violations rule. Under that rule, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease. *See Blair*, 859 N.E.2d at 1192, *see also Belleville Toyota, Inc., v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 190-91 (Ill. 2002). "A continuing violation is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation. However, where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Blair*, 859 N.E.2d at 1192.

*Blair* is instructive here as well. In that case,

> the court found that the act of publishing the plaintiff's picture in various mediums around a casino did not fall into the "continuing violation" exception and instead constituted a single overt act. The court noted that although the picture was displayed via several mediums over a period of time, it was used for a single purpose, to advertise one steakhouse, and targeted a single audience, casino patrons. As a result, the plaintiff had alleged only one overt act with continual effects. But the court noted that a republication can constitute a new cause of action if the publication is altered so as to reach a new audience or promote a different product.

*Yeager*, 2019 WL 447743, at *5.

9

Here, Plaintiffs have alleged two single publication events with continual effects, which is not sufficient to establish a continuing violation. Plaintiffs' only factual allegations to support their continuing violations theory are that the original posts are still publicly available on Lamp Liter's Facebook page. (Dkt. 1 ¶¶ 52, 63.) At most, Plaintiffs allege that Lamp Liter published each of their images one time, to promote a single event, targeting a single audience. They do not allege any other conduct or acts by Lamp Liter, let alone a "pattern" of conduct that continues through the present. Nor do they allege any kind of republication in other media or attempts by Lamp Liter to target new audiences. *Cf. Yeager*, 2019 WL 447743, at *5; *see also Troya*, 2017 WL 6059804, at *14-15. To the extent Plaintiffs allege ongoing harm as a result of the single acts of publication, those allegations are entirely conclusory and do not contain nearly enough detail to survive a motion to dismiss. *See* Dkt. 1 ¶¶ 52, 63 (Lamp Liter's post remaining up "contitut[es] a continuous and ongoing harm"); ¶¶ 54, 65 (Lamp Liter's use of Plaintiffs' images is "continuous and ongoing" and Plaintiffs suffered a "continued or repeated injury"). Plaintiffs have not pleaded a continuing violation. Their claims accrued on the dates Lamp Liter published their images on Facebook, and both their negligence and IRPA claims are time-barred.

## CONCLUSION

For the reasons stated here, Defendant's motion [Dkt. 18] is granted in part and denied in part. Plaintiffs' negligence and IRPA claims are dismissed as time-barred. Defendant's motion to dismiss Plaintiffs' Lanham Act claims is denied.

_____
Virginia M. Kendall
United States District Judge

Date: July 31, 2019